ADAM VILLAR,

        Plaintiff,

   v.

COUNTY OF ERIE and
TIMOTHY B. HOWARD, *Individually
and as Erie County Sheriff*,

        Defendants.

**DECISION AND ORDER**

13-CV-467S

## I.  INTRODUCTION

In this action, Plaintiff Adam Villar seeks damages from Erie County and its sheriff, Timothy B. Howard, for violations of his constitutional rights while he was incarcerated in the Erie County Correctional Facility ("ECCF"). Before this Court is Defendants' Motion to Dismiss Villar's complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. (Docket No. 55.) For the following reasons, Defendants' motion is granted in part and denied in part.

## II.  BACKGROUND

This Court assumes the truth of the following factual allegations contained in Villar's complaint and the attached exhibits.[1]  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter

---

[1] When determining the sufficiency of a plaintiff's claim for Rule 12 (b)(6) purposes, courts may consider the factual allegations in the complaint, documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, or documents that were either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.  Brass v. Am. Firm Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Cortec Ind., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff Adam Villar was arrested in Erie County on December 31, 2009 and taken to the Erie County Holding Center ("ECHC") in Buffalo, New York. (Complaint, Docket No. 1-1, pp. 3-78, ¶ 16.) On January 2, 2010, Villar was transported to ECCF in Alden, New York. (Id., ¶ 17.) On January 3, 2010, Villar was sexually assaulted and raped by another inmate in a shower stall in the Nova Unit at ECCF. (Id., ¶¶ 20-25.) The inmate who sexually assaulted Villar "ran" the Nova Unit and was known to both Erie County and Sheriff Howard. (Id., ¶ 24.) This inmate stated that he had done this—referring to sexual assault—before. (Id., ¶ 26.) On January 4, 2010, Villar was sexually assaulted again, by the same inmate, in a shower stall in the Nova Unit at ECCF. (Id., ¶¶ 27-29.)

Defendant Erie County operated ECCF. (Id., ¶ 5.) Timothy Howard, as Erie County Sheriff, was and is responsible for the day-to-day operations of ECCF. (Id., ¶ 9.)

Defendants Erie County and Timothy Howard were aware of the risk of sexual assault faced by Villar in January 2010. (Id., ¶¶ 12, 30.) On July 15, 2009, Acting Assistant U.S. Attorney General Loretta King issued a letter ("the King letter") detailing the results of a Department of Justice investigation of ECHC and ECCF. (Id., ¶ 15.) Erie County and Sheriff Howard were on notice of the risks to inmates described in this letter. (Id.) The United States brought a lawsuit based on the issues in the King letter against Erie County and Sheriff Howard on September 30, 2009. (Id., ¶ 15.) The King letter and the complaint from the resulting lawsuit are attached as exhibits to Villar's complaint. (Docket No. 1-1 at pp. 29-78 (letter), pp. 14-25 (complaint).)

The King letter noted 70 reported incidents of inmate-on-inmate violence between January 1, 2007, and February 9, 2008, detailing five specific incidents where assaults

happened in the absence of staff supervision. (Id., p. 49.) It identified inadequate inmate supervision and a failure to properly classify inmates as causes of this violence. (Id., pp. 48-49.) The letter referred to an April 2007 New York State report that also addressed the inadequate classification system. (Id., p. 52.) The King letter recommended remedial measures including increased staffing levels, improved supervision of common areas, improved security rounds, the development of a classification system that classified inmates based on inmate history, and rape prevention training for staff. (Id., pp. 69-71.) Defendants did not implement any of the remedial measures suggested in the King letter. (Complaint, ¶¶ 14, 33-34.)

## III. DISCUSSION

Villar alleges that both Defendants are liable under 42 U.S.C. § 1983 for failing to protect him from assault while he was in their custody, in violation of his Fourteenth Amendment rights. Villar alleges several theories of Defendants' liability. Villar alleges that both defendants are liable because they knew of and disregarded a serious risk that he would be assaulted. (Complaint, ¶¶ 36-37.) Villar alleges that Erie County, as a municipality, and Sheriff Howard, in his official capacity, are liable to him because there was a policy or custom of failing to prevent inmate assaults at ECCF. (Complaint, ¶¶ 33-34.) Finally, Villar alleges that Sheriff Howard, in his individual capacity, is liable because he was personally involved in the failure to protect him. (Id., ¶¶ 34.)

Defendants move to dismiss Villar's claim for failure to state a claim upon which relief can be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure.

## A. Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id.; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context-specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

**B.      Villar has sufficiently alleged Defendants' deliberate indifference.**

Villar alleges that Defendants are liable for failing to protect him because they knew of a risk to him, and failed to remedy it. Defendants argue that dismissal of Villar's claim is warranted because Villar has not sufficiently alleged their knowledge of such a risk, and therefore has not established their "deliberate indifference." Villar argues that he has sufficiently alleged Defendants' knowledge by incorporating the King letter into his complaint.

"[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). This includes inmate-on-inmate sexual assault. Id. ("Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one

prisoner by another serves no legitimate penological objectiv[e]. … Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal citations and quotation marks omitted). Officials' failure to protect an inmate from a risk of assault can therefore be a violation of that inmate's constitutional rights under the Eighth and Fourteenth Amendments. Id. at 834; see also Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); Taylor v. City of New York, No. 16 CIV. 7857 (NRB), 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018).

But alleging an inmate-on-inmate sexual assault, without more, does not state a claim for a constitutional violation. To state a claim for failure to protect, a plaintiff must allege (1) incarceration under conditions posing a substantial risk of harm, and (2) that the defendants acted, or failed to act, with deliberate indifference. James v. Westchester Cty., No. 13-CV-0019 NSR, 2014 WL 4097635, at *3 (S.D.N.Y. Aug. 19, 2014); Nolen v. Goord, No. 02 CV 499, 2006 WL 448686, at *4 (W.D.N.Y. Feb. 17, 2006), aff'd, 218 F. App'x 41 (2d Cir. 2007) (citing Farmer, 511 U.S. at 833-34).

The requirements for establishing deliberate indifference differ between claims for Eighth Amendment and Fourteenth Amendment violations. Under the Eighth Amendment, which applies to convicted prisoners, officials' failure to protect a prisoner constitutes cruel and unusual punishment when correction officials (1) are subjectively aware of an excessive risk to the prisoner's health or safety and (2) disregard that risk. Starkes v. Annucci, No. 1:19-CV-7270 (CM), 2019 WL 6051445, at *2 (S.D.N.Y. Nov. 13, 2019) (citing Farmer, 511 U.S. at 828).

On the other hand, "a pretrial detainee's claims of unconstitutional conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment." Darnell,

849 F.3d at 29 (citations omitted). Because pretrial detainees, unlike convicted prisoners, "cannot be punished at all, much less maliciously and sadistically," "there is no basis for the reasoning … that the subjective intent requirement for deliberate indifference claims under the Eighth Amendment, as articulated in Farmer, must apply to deliberate indifference claims under the Fourteenth Amendment." Id. at 34-35 (citing Kingsley v. Hendrickson, ---US---,135 S. Ct. 2466, 2472–73, 192 L. Ed. 2d 416 (2015)).

In the Second Circuit, therefore, a pretrial detainee can establish a defendant's deliberate indifference even when the defendant merely *should have known* of the serious risk to the detainee. Starkes, 2019 WL 6051445, at *2 (citing Darnell, 849 F.3d at 35). This analysis applies to failure to protect claims, just as it does to claims pertaining to conditions of confinement. Taylor v. City of New York, No. 16-CV-7857 (NRB), 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) ("Although Darnell involved a Fourteenth Amendment challenge to a prisoner's conditions of confinement, its holding applies with equal measure to failure to protect claims.").

In terms of the specificity of the risk of which the defendant should be aware, a plaintiff need not allege that a defendant knew, or should have known, of a risk particular to that plaintiff. See Farmer, 511 U.S. at 843 ("It does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."). Thus, "if ... a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant ... has been exposed to information concerning the risk and thus must have known about it, then such evidence

should be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Farmer, 511 U.S. at 842-43.

Alleging a defendant's exposure to information concerning a longstanding or pervasive risk, along with allegations of the harm the plaintiff suffered, can therefore suffice to state a claim for defendant's knowledge of that risk. See, e.g., Anderson v. Buie, No. 12-CV-6039-FPG, 2015 WL 9460146, at *14 (W.D.N.Y. Dec. 23, 2015) (prisoner's allegation of instances of denial of medication, plus incorporation of Department of Justice letter alerting Sheriff and County to serious issue with prisoners being denied medications, sufficient to allege deliberate indifference); Warren v. Goord, 476 F. Supp. 2d 407, 411 (S.D.N.Y. 2007) (prisoner's allegation of facts of his own attack, combined with allegation that defendant officials were aware of previous stabbings in prison yard, was sufficient to allege deliberate indifference); Murchison v. Keane, No. 94 CIV. 466 (CSH), 1996 WL 363086, at *7 (S.D.N.Y. July 1, 1996) (prisoner's allegations of his own attack, of officer's general knowledge of attacks, and of notation of attacks in the officers' log book were sufficient to allege deliberate indifference).

But allegations that draw no connection between the particular risk to a plaintiff and defendants' knowledge of a generalized risk to all prisoners will fail. See, e.g., Parris v. New York State Dep't of Corr. Servs, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (dismissing complaint where plaintiff failed to allege that defendant prison officials knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff).

Defendants argue that Villar has not adequately pled their knowledge of a risk or threat particular to Villar, and claim that the King letter does not constitute notice of such a risk. (See Docket No. 55-2 at p. 14-15.) ("The Complaint does not set forth any

8

allegations that the King letter put the Defendants on notice of any imminent, particular risk to Plaintiff, …nor does the King Letter even make reference to Plaintiff, the Nova Unit at the ECCF, or an inmate that goes by the nickname 'Mexico.'") Plaintiff argues that he has sufficiently alleged Defendants' knowledge by pleading the facts of his own assault, the facts of prior assaults detailed in the King letter, and the King letter's suggestions for improving supervision and inmate categorization.

Villar does not indicate in his complaint whether he was a pretrial detainee or a convicted prisoner when he was assaulted. However, he states that he was arrested on December 31, 2009, was moved to ECCF on January 2, 2010, was assaulted on January 3 and 4, 2010, and remained in custody at ECCF until January 7, 2010. (Complaint, ¶¶ 16-18.) Given this short time frame, it is reasonable to assume that Villar was a pretrial detainee at the time of his assaults. This Court will therefore analyze his claim under the 14th Amendment, under which Villar must sufficiently allege that Defendants either knew or should have known of a risk to his safety, and that they disregarded that risk. This Court finds that he has done so.

Villar alleges that he was injured when he was raped twice by an inmate at ECCF in January 2010. (Complaint, ¶¶ 25, 29.) He alleges that this inmate "ran" the Nova unit, and was well known to Defendants. (Id., ¶ 24.) He alleges that his attacker said that he had done something like this before. (Id., ¶ 26.)

Villar sufficiently alleges Defendants' knowledge of a risk that he would be assaulted. He alleges that Erie County and Howard were on notice of a risk to vulnerable inmates of sexual assault, both from prior incidents in ECCF, and through the King letter. (Id., ¶¶ 15, 36.) Because the King letter was written to County Executive Collins and

copied to Sheriff Howard, it is reasonable to infer that Defendants knew its allegations. At the very least, Villar has sufficiently alleged that Defendants should have known them.

The King letter states that "there were over 70 reported incidents of inmate-on-inmate assaults, including sexual assaults," between January 1, 2007, and February 9, 2008. (Docket No. 1-1 at 48.) It also states that the prison was not adequately staffed and that staff did not intervene in altercations between inmates. (Id., pp. 48-49). The letter notes that Undersheriff Brian Doyle publicly stated that the facility lacked sufficient "security staff." (Id.) The King letter also states that the classification system fails to assess inmates' criminal history and likelihood of victimization, and fails to separate those vulnerable to attack from the general population. (Id., pp. 52-53.) As an example, the King letter notes an August 2008 situation where the failure to separate a 16-year old boy from the general population led to his being sexually assaulted. (Id., p. 53.)

Villar also alleges that, despite their knowledge of these facts, Defendants disregarded the risk of attack. He alleges that Defendants failed to implement an adequate supervision or classification system that could have prevented his assault. (Complaint, ¶¶ 12-14.) Viewing all these allegations as true, and making all reasonable inferences in Villar's favor, this Court finds that Villar has adequately pled Defendants' deliberate indifference to a risk to him.

Defendants argue that the King letter must not be considered as part of the complaint, because they denied the truth of the facts alleged in it. (Docket No. 55-2 at 15.) But this misunderstands the Court's position in considering a motion to dismiss. This Court must construe the complaint liberally, assume all factual allegations are true, and draw all reasonable inferences in the plaintiff's favor. Goldstein, 516 F.3d at 56. It may

consider any documents attached to the complaint in resolving the motion to dismiss. Brass, 987 F.2d at 150. Here, Villar attached the King letter to his complaint.

Having considered the complaint and the attached letter, this Court finds that Villar has sufficiently alleged Defendants' knowledge of and disregard of a risk of harm to him. Defendants' motion to dismiss on these grounds will therefore be denied.

**C.      Villar has sufficiently alleged the existence of a policy or custom that deprived him of a constitutional right.**

Defendants argue that this Court should dismiss Villar's failure-to-protect claim against Erie County and Sheriff Howard, in his official capacity, because Villar has not sufficiently alleged the existence of a municipal policy that caused his injury. Villar argues that Erie County and Sheriff Howard, in his official capacity, are liable because their policy of inadequate supervision and inadequate inmate classification caused Villar's sexual assault by a fellow inmate. Villar further argues that by attaching the King letter to his complaint, he has stated sufficient facts supporting an inference of Defendants' policy or custom of failing to protect inmates from assault at ECCF.

Section 1983 imposes liability on a municipality whose official custom or policy causes an employee to violate an individual's constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To state a claim against a county or a sheriff in his official capacity, a plaintiff must plead: (1) the existence of an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. See Zahra v. Town of Southold, 48 F.3d 674, 684 (2d Cir. 1995) (citing Monell, 436 U.S. at 692).

A plaintiff can allege the existence of such a policy through: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by the government officials

responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) failure by policymakers to train or supervise subordinates." Smith v. Erie Cty. Holding Ctr., No. 08-CV-0485 SR, 2013 WL 2286176, at *4 (W.D.N.Y. May 23, 2013) (citing Beckwith v. Erie Cty. Water Auth., 413 F.Supp.2d 214, 225 (W.D.N.Y. 2006)).

"[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 126 (2d Cir. 2004) (internal quotations omitted). Thus, alleging an official's knowledge of violations and acquiescence to them can suffice to state a claim based on the existence of a municipal policy. See, e.g., Smith, 2013 WL 2286176, at *4 (finding that the plaintiff sufficiently alleged the existence of a municipal policy through allegations that the county lacked a policy for appropriately treating and accommodating inmates with sensorial disabilities; that the absence of such a policy was noted by the New York State Commission on Corrections as part of its determination that the medical treatment plaintiff received fell short of community standards of medical care; and that the same Commission had corresponded with the defendant regarding the plaintiff's medical care).

But a single incident, especially involving actors below the policy-making level, does not suffice to show the existence of a municipal policy. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985). Nor does the mere assertion that such a policy exists. Dwares v. City of N.Y., 985 F.2d 94, 100 (2d

Cir. 1993), overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). A plaintiff must therefore allege facts tending to support, at least circumstantially, an inference that the alleged municipal policy or custom exists. Id.

An official-capacity suit is, essentially, a suit against the municipality of which the officer is an agent. Stancati v. Cty. of Nassau, No. 14-CV-2694 JS ARL, 2015 WL 1529859, at *2 (E.D.N.Y. Mar. 31, 2015) (citing Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)). "[I]n the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." Phillips v. Cty. of Orange, 894 F.Supp.2d 345, 385 (S.D.N.Y. 2012). As an initial matter, therefore, this Court will dismiss the claim as against Sheriff Howard in his official capacity.

Defendants argue that Villar has not sufficiently alleged the existence of a municipal policy or custom because he has only described his own assaults and made conclusory statements about official policies. Defendants also argue that the King letter should not be considered because it contains only allegations that were refuted and denied by Defendants. Villar argues that by attaching the King letter to his complaint, he has alleged the facts from that letter, and thus has sufficiently alleged the existence of a policy or custom.

Defendants are correct that Villar must allege more than simply his own assault to sufficiently allege a policy or custom. See City of Oklahoma City, 471 U.S. at 823–24. But they misstate the significance of the King letter. In assessing a motion to dismiss, a court may consider documents attached to the complaint as exhibits or incorporated in it by

13

reference. See Brass v. Am. Firm Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). The King letter suggests that Defendants were informed of the allegations contained therein. The fact that Defendants have denied the truth of the allegations in the King letter in another, separate proceeding does not prevent consideration of them for the purpose of assessing this motion to dismiss.

This Court finds that Villar has stated a claim against Erie County. Villar has alleged (1) that there was a municipal policy or custom of insufficient supervision and improper classification; (2) that this policy caused the harm to him; and (3) that Defendant Erie County's failure to protect him, under these circumstances, is a constitutional violation.

Villar has alleged the existence of a policy, because he has alleged that Erie County was aware of and acquiesced to constitutional deprivations at ECCF. See Amnesty, 361 F.3d at 126. Villar alleges, through the King letter, that Defendants were aware of 70 incidents of inmate-on-inmate violence between January 1, 2007, and February 9, 2008. (Docket No. 1-1 at pp. 48-49.) He alleges that there was inadequate inmate supervision in ECCF, and that this inadequate supervision led to the high number of inmate-on-inmate assaults. (Id., p. 49; Complaint, ¶ 33.) Villar alleges that Erie County failed to adopt and implement an inmate classification system that would keep problematic inmates separate from the general population. (Complaint, ¶¶ 14-15, 33, 36.) As an example of improper inmate classification, the King letter describes the August, 2008, sexual assault of a 16-year-old boy put into a "bullpen" overnight with adult inmates. (Docket No. 1-1 at p. 68.)

The King letter recommends remedial measures including increased staffing levels, better security rounds, an improved inmate classification system, and rape

prevention training. (Id., pp. 69-71.) Villar alleges that the County had not adopted any of these measures at the time of Villar's assault. (Complaint, ¶¶ 14, 33-34.) All of this suffices to allege the County's policy, in that it was aware of violations at ECCF, and at the very least acquiesced to them. See Amnesty, 361 F.3d at 126.

Villar has further alleged causation, by the inference that had proper supervision or inmate classification been done, he would not have been assaulted. And failure to protect inmates from assault, under the conditions Villar alleges, states a claim for a Fourteenth Amendment violation. See Farmer, 511 U.S. at 833; Darnell, 839 F. 3d at 29; Taylor, 2018 WL 1737626, at *12.

For the foregoing reasons, this Court finds that Villar has sufficiently alleged Erie County's municipal liability. Defendants' motion to dismiss the claim against Erie County will therefore be denied.

**D.      Villar has sufficiently alleged Sheriff Howard's personal involvement in the constitutional violation.**

Villar also brings his failure-to-protect claim against Sheriff Howard in his individual capacity. Defendants argue that this claim must be dismissed because: (1) Villar has not sufficiently alleged Howard's personal involvement in the constitutional violation; (2) Villar has not stated a claim for an "underlying constitutional violation" for which Howard can be held liable; and (3) Villar has not alleged that Howard engaged in conduct outside the scope of his employment. Villar argues that he has stated a claim for Howard's personal involvement, because he has alleged that Howard tolerated a policy or custom of violations, and that allegations of conduct outside the scope of Howard's employment are not required to state a claim.

An official sued in his or her official capacity under § 1983 is liable only if the plaintiff can show the official's personal involvement in the constitutional violation. See Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Al–Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989). A plaintiff can claim the personal involvement of a supervisory defendant by alleging that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)).

Defendants argue that the only theory under which Villar can claim Howard's personal involvement is the second Colon factor, i.e., that Howard failed to remedy a wrong after receiving a report of it. They argue that this is the case because they have already established that there was no policy or custom of allowing unconstitutional practices, and that no defendant was deliberately indifferent to a risk of harm. Plaintiff argues that Howard was personally involved both because he allowed the continuation of a policy or custom of inmate assaults and because he was deliberately indifferent to unconstitutional acts at ECCF.

This Court finds that Plaintiff has stated a claim for Howard's personal involvement

based on his allowing the continuance of a policy or custom. Alleging a defendant's knowledge of past incidents and his or her subsequent inaction can suffice to state a claim on this basis. Pusepa v. Annucci, No. 17-CV-1765 (RA), 2019 WL 690678, at *6 (S.D.N.Y. Feb. 19, 2019) ("[S]everal courts in this Circuit have found, … that notice of past sexual abuse incidents (and subsequent inaction) can satisfy the third *Colon* factor [allowing the continuance of a policy or custom] on motion to dismiss."); see also Doe v. Kaplan, No. 16-CV-9870, 2018 WL 1449523, at *6 (S.D.N.Y. Mar. 22, 2018) ("On the facts here, it is plausible that Defendants Kaplan and Snyder would have been notified of the five prior instances of convictions and/or charges of 3rd degree rape of Bedford corrections officers between 2009 and 2015, and would have been responsible for deciding how to change Bedford's policies and procedures related to sexual conduct."); Carpenter, 2017 WL 3887908, at *10 ("[W]hat nudges Plaintiff's allegations over the line from conceivable to plausible is the fact that she has alleged that Defendant Apple was on notice of previous incidents at ACCF involving male corrections officers having inappropriate sexual contact with female detainees."). As in these cases, Villar maintains that Howard was on notice of 70 prior inmate-on-inmate attacks occurring within the course of 13 months, through the King letter, and has alleged, in his complaint, that Howard was a policymaker responsible for the operations at ECCF who failed to remedy the problems about which he knew. Villar has therefore sufficiently alleged Howard's allowing the continuation of a policy or custom under which unconstitutional practices occurred.

Because this Court has already found that Villar has sufficiently alleged both defendants' deliberate indifference, it also finds that he has alleged Howard's personal

involvement based on his awareness of, and failure to remedy, a risk.

Defendants next argue that dismissal is warranted because Villar has not alleged the "involvement of any of the Sheriff's subordinates in the alleged constitutional deprivation." (Docket No. 55-2 at 19.) They argue that this Court need not even reach the analysis of Howard's personal involvement, because there is no "underlying constitutional violation" by a subordinate that would trigger an analysis of Howard's supervisory liability. (Id.) Villar does not address this argument, but this Court finds it unavailing nonetheless.

Defendants rely on a case from the District of Connecticut for the proposition that, if a plaintiff has not asserted an underlying unconstitutional act by lower-level guards, a case against a higher prison official cannot go forward. Id. (citing Aguilar v. Conn., No. 3:10-CV-1981 VLB, 2013 WL 657648, at *5 (D. Conn. Feb. 22, 2013), aff'd sub nom. Doe v. Whidden, 557 F. App'x 71 (2d Cir. 2014) (summary order)). In Aguilar, the court dismissed the § 1983 claim of a plaintiff who was raped by a fellow inmate in a juvenile detention facility. The court granted the defendant warden's motion for summary judgment because "for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation." Aguilar, 2013 WL 657648, at *5 (citing Blyden v. Mancusi, 186 F.3d 252, 265 (2d Cir.1999)).

Although the court in Aguilar framed the "underlying constitutional violation" as a prerequisite step before beginning the Colon analysis, it was the existence and enforcement of a "multi-factored, comprehensive classification system for security" at the correctional facility in question that caused the court to look for some other basis for the warden's liability. Aguilar, 2013 WL 657648, at *2. On appeal, the Second Circuit applied the Colon factors to the warden's conduct, and held that, given the evidence of the

18

existence and enforcement of the policy, the warden did not meet any of the <u>Colon</u> factors for personal involvement. <u>Doe v. Whidden</u>, 557 F. App'x at *73. The Second Circuit particularly noted that the plaintiff had not provided "any expert opinion indicating that the warden's conduct in alerting subordinates to the Sexual Assault Prevention Policy fell so far below the training responsibilities of a warden in her situation as to manifest gross negligence or deliberate indifference." <u>Id.</u> In other words, the Second Circuit did not base its holding on the existence or lack of an "underlying constitutional violation," but simply applied the <u>Colon</u> factors to the warden and found her not liable.

Using the same logic, Villar has alleged enough to state a claim. He has alleged not only that he was assaulted, but also that–unlike in <u>Aguilar</u>—there was a policy or custom of failing to properly supervise and classify inmates which led to his assault by a fellow inmate. Villar has attached an outside source with facts and opinions pointing to Howard's allowance of inadequate policies. At this stage, therefore, Villar has sufficiently alleged Howard's personal involvement.

Defendants further argue that Villar has not alleged Howard's personal involvement because he has not alleged conduct outside the scope of Howard's employment. Plaintiff argues that he need not allege this to establish Howard's personal involvement.

As noted, an official sued in his or her individual capacity is liable only if he or she was personally involved. <u>See</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995). Personal involvement is assessed using the five <u>Colon</u> factors, which allow a court to determine an official's level of involvement. Action "outside the scope of an official's employment" is not one of these factors.

Consequently, this Court finds that Villar has sufficiently pled Howard's personal involvement in the alleged constitutional violation, by alleging that Howard allowed the continuance of a policy or custom of constitutional violations, and that he knew of and failed to remedy the risk of assault. Defendant Howard's motion to dismiss the claim against him in his individual capacity will therefore be denied.

**E.  Villar's claim for punitive damages against Howard in his individual capacity does not warrant dismissal.**

Defendants next argue that Villar's claim for punitive damages should be dismissed. They argue that punitive damages are not permitted against municipalities or municipal actors in their official capacity. They further argue that, since Villar has not sufficiently alleged Howard's personal involvement in his injury, Villar's claim for punitive damages against Howard in his individual capacity must fail. Villar argues that, because he has sufficiently alleged Howard's personal involvement, no dismissal is warranted.

 Punitive damages are not available against a municipality in a § 1983 action. See City of Newport v. Fact Concerts, Inc, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981). "It is settled that punitive damages cannot be recovered from a municipal entity or municipal employees sued in their official capacity." Krause v. Buffalo & Erie Cty. Workforce Dev. Consortium, Inc., 426 F. Supp. 2d 68, 106 (W.D.N.Y. 2005), aff'd, 425 F. Supp. 2d 352 (W.D.N.Y. 2006) (citing Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 262 (2d Cir. 1997), cert. denied, 520 U.S. 1211, 117 S.Ct. 1695, 137 L.Ed.2d 821 (1997) (holding that defendant municipal officers, sued only in their official capacity, enjoyed the same immunity from punitive damages as did the defendant municipality)).

Here, Villar does not seek punitive damages against either Erie County or Sheriff

Howard in his official capacity. Defendants' first argument is therefore moot. As to punitive damages against Howard in his individual capacity, because this Court finds that Villar has stated a claim against Howard in his individual capacity, there is no cause to dismiss the demand for punitive damages at this stage.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Villar's claim is granted in part and denied in part. Because the cause of action against Howard in his official capacity is duplicative of that against Erie County, this Court will dismiss Villar's claim against Howard in his official capacity. In all other respects, Defendants' motion is denied. Defendants will have 14 days from the entry date of this decision to file an answer to the complaint consistent with Rule 12(a)(4)(A).

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 55) is granted in part and denied in part.

FURTHER, that the claim against Timothy B. Howard in his official capacity is dismissed.

FURTHER, that Defendants shall file an answer to the complaint within 14 days of the entry date of this decision consistent with Rule 12(a)(4)(A).

SO ORDERED.

Dated:    December 27, 2019
          Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge